UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Case No.: 1:23-cv-02630

ANTIONETTE WOODARD, individually
And on behalf of all others similarly situated,

    Plaintiff/Counter-Defendant,

v.

HEALTH INSURANCE ALLIANCE LLC,

    Defendant/Counter-Plaintiff.
_____/

## DEFENDANT/COUNTER-PLAINTIFF HEALTH INSURANCE ALLIANCE LLC'S MOTION TO BIFURCATE DISCOVERY

Defendant/Counter-Plaintiff, Health Insurance Alliance LLC ("Defendant/Counter-Plaintiff" or "HIA"), by and through the undersigned counsel, hereby respectfully moves to bifurcate discovery under Federal Rules of Civil Procedure 1, 26, and 42, and in support thereof, states as follows:

### INTRODUCTION AND BACKGROUND

Plaintiff/Counter-Defendant Antoinette Woodard ("Plaintiff/Counter-Defendant" or "Woodard") initiated this manufactured lawsuit under the Telephone Consumer Protection Consumer Act ("TCPA") and Florida Telephone Solicitations Act ("FTSA"). Woodard's claims are based on the "unwanted" calls that she allegedly received, despite the fact that she and/or her agent submitted fraudulent opt-in information through a third-party website and deceptively solicited callbacks from HIA during the calls. Specifically, in the transferred calls, Woodard pretended to be interested in HIA's services or products, intentionally failed to make do-not-call requests, voluntarily provided her and her husband's information, and deceptively solicited

callbacks and HIA's information so that she could allege she received "unsolicited" telemarketing calls from HIA in her manufactured TCPA lawsuit. As such, HIA filed its counterclaims against Woodard for fraud.

This case is a prime candidate for bifurcated discovery where the parties would initially focus discovery on narrowly tailored issues relevant to the merits of Woodard's individual claims and HIA's counterclaims, before conducting broader, expensive class discovery (if at all), as it would be much more efficient, conserve judicial and party resources, and lead to a swifter resolution.

There are numerous critical threshold dispositive issues unique to Woodard that could bring about a swift end to this case. If Woodard does not have Article III standing or her claims fail on the merits, it will be unnecessary and wasteful to conduct any class discovery. Therefore, there is simply no good reason why the parties or this Court should be burdened with conducting unnecessary, costly, and time-consuming class discovery beyond the limited discovery needed to resolve these narrow case-dispositive questions, among other narrow issues unique to Woodard's individual claims and HIA's counterclaims for which no class discovery is required to resolve.

As discussed below, such bifurcated discovery approaches have been approved by numerous courts (including courts in this District), especially in TCPA cases like this one, for the sake of judicial and party economy. These courts have correctly recognized that it is often more efficient for the parties and courts to address and resolve narrow case-dispositive issues specific to the named plaintiff first in TCPA cases, and that class discovery is not necessary to determine such issues. This is such a case.

Further, the proposed bifurcated discovery, during which the parties focus on the merits of Woodard's individual claims and HIA's counterclaims, would not prejudice any party at all; and

it would further conserve judicial resources by avoiding discovery disputes that may (and would) be unnecessary if Woodard's claims are dismissed. By contrast, HIA will suffer severe hardship if forced to engage in costly and burdensome class discovery, of which it will undoubtedly bear the most burden and expense, that will likely be rendered moot if (and when) Woodard's individual claims fail on summary judgment.

In sum, there is ample "good cause," for the sake of efficiency, for this Court to exercise its broad discretion to bifurcate discovery, so the parties can first resolve the validity of Woodard's claims before engaging in much more costly and expansive discovery, if at all. Myriad courts have done so in TCPA cases, recognizing the efficiencies to be gained by the parties and court in doing so. For these reasons, explained more fully below, this Honorable Court should do so here too.

## LEGAL STANDARD

A court may, "for good cause," limit the scope of discovery or govern the sequence of discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) ("[U]pon motion the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects"). Similarly, Rule 1 requires the court to secure the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The district court has "extremely broad discretion" to manage litigation, including discovery. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

As part of its discretion, a court has the power to bifurcate discovery under Federal Rule of Civil Procedure 42. *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2004 WL 609326, at *2 (N.D. Ill. Mar. 23, 2004) ("Whether to bifurcate discovery is a matter committed to the discretion of the trial court."); *see also Haligas v. City of Chicago*, 671 F.

3

Supp. 3d 894, 895 (N.D. Ill. 2023). While the decision to bifurcate discovery depends on the circumstances of the individual case, a court may do so when it serves the interest of judicial economy without unfairly prejudicing the non-moving party. *See Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1034-35 (N.D. Ill. 2017); *see also Christian v. Generation Mortg. Co.*, No. 12 C 5336, 2013 WL 2151681, at *4 (N.D. Ill. May 16, 2013) ("Bifurcation is warranted where it promises to promote efficiency and economy without working substantial prejudice."). "In deciding motions to bifurcate merits discovery from class certification discovery, courts consider the following factors: (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning 'the potential impact a grant or denial of certification would have upon the pending litigation,' and whether the definition of the class would 'help determine the limits of discovery on the merits[;]' and (3) severability, meaning whether class certification and merits issues are closely enmeshed[.]" *Harris v. comScore, Inc.*, No. 11 CV 5807, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012) (internal quotations omitted).

## ARGUMENT

As demonstrated below, given the need to resolve the narrow case-dispositive issues concerning Woodard's individual claims and HIA's counterclaims, and the inherent and extreme prejudice to HIA of conducting broader discovery now that may ultimately prove unnecessary if Woodard's claims fail on the merits, bifurcated discovery is appropriate here.

**I.   Discovery Regarding Woodard's Individual Claims and HIA's Counterclaims Should Occur First Before Any Putative Class Discovery.**

A bifurcated discovery is particularly appropriate in TCPA class actions, like here, where the plaintiff's claim depends on individualized determinations of consent and may be dispositive of class claims. Here, the discovery on Woodard's claims and HIA's counterclaims may be

4

dispositive of the putative class claims because (1) Woodard provided consent to receive telemarking communications, (2) Woodard established a business relationship with HIA during the calls where she repeatedly requested callbacks, and (3) Woodard's submission of opt-in information and her conduct during the calls constituted fraud.

For example, in one TCPA case in this District, *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16 C 9281, 2018 WL 3474444, at *5-6 (N.D. Ill. July 19, 2018), the defendants sought to bifurcate discovery related to the named plaintiff's individual claims first and then the claims of the proposed class. The court granted the defendant's motion. Citing Fed. R. Civ. P. 1, the court stated that "where some limited, first-stage production could stave off substantial wasted efforts, the Court believes bifurcation is appropriate." *Id.* at *6. This Court should also take the same approach here.

Here, a bifurcated discovery on Woodard's claims and HIA's counterclaims will reveal that Woodard indeed submitted the consent form to receive telemarketing communications and she established a business relationship with HIA during the transferred calls by deceptively soliciting callbacks. This will be dispositive of Woodard's claims. *See, e.g., Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-CV-587, 2018 WL 3933472, at *1 (S.D. Ohio Aug. 16, 2018) (granting summary judgment in favor of the defendant on the plaintiff's (represented by the same counsel here) TCPA claim and finding that the plaintiff's "deceptive conduct gave [defendant] an objectively reasonable basis for believing that he had established a business relationship with [defendant]"). Such a discovery will also confirm that Woodard defrauded HIA. Indeed, HIA's current evidence strongly suggests that Woodard manufactured this TCPA lawsuit. For example, the uncontroverted call recording transcripts show that Woodard was actively soliciting callbacks from HIA, and she provided her and her husband's information to participate in HIA's business. In any event, if the

5

bifurcated discovery confirms that Woodard's claims are not valid, any putative class discovery will no longer be necessary. Thus, a bifurcated discovery is appropriate here under this circumstance.

Further, courts have often bifurcated discovery in TCPA cases such as this one for efficiency purposes, so the parties can focus first on the narrow plaintiff-specific discovery necessary for the court to address the merits of the named plaintiff's claims before addressing broader issues, like class discovery. *See, e.g., Newell v. Aliera Healthcare, Inc.*, No. 1:19-CV-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) ("[T]he Court finds that bifurcating discovery into two phases (i.e., limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff."); *see also Osidi v. Assurance IQ, LLC*, No. 21-CV-11320-ADB, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case and noting that "the need for class discovery may be eliminated if Defendant is able to demonstrate that the Named Plaintiff lacks viable individual claims."); *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129 (D. Mass. Feb. 27, 2019) (same); *Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA case and noting that "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery"); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014) ("[T]he Court finds that bifurcating discovery into two phases will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective

manner with no significant prejudice to Plaintiff."); *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 7856269, at *1 (S.D. Fla. Nov. 27, 2012) (granting motion for bifurcation discovery as to the plaintiff's individual claims before resolving the class-certification issue).

## II. Bifurcation Is Warranted Here Because It Will Drive a Just, Speedy, Inexpensive, and Efficient Resolution of This Case.

If the bifurcated discovery shows that Woodard's individual claims lack merits or she lacks Article III standing, it will dispose of this whole case quickly, efficiently, and still at an early stage without additional expense or burden on the parties or this Court. This alone justifies bifurcating discovery here. *See* Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Indeed, as noted above, if the bifurcated discovery proves, *inter alia*, that (i) Woodard provided consent to receive telemarketing communications, (ii) Woodard established a business relationship with HIA, and (iii) Woodard committed fraud by submitting the opt-in information and defrauded HIA during the transferred calls, then Woodard's claim quickly collapses and fails as a matter of law, both on the merits and on Article III standing grounds. These are all undoubtedly lynchpin issues that should be the focus of the parties' initial discovery efforts here. And if Woodard's individual claims fail, she cannot represent the purposed class either, thus eliminating the need for costly class discovery.

Accordingly, while HIA acknowledges bifurcation may not be universally appropriate in all cases, this is not a routine "merits" versus "class" bifurcation request, especially as (among other reasons) the threshold issue of Woodard's standing under the TCPA is in serious doubt given the unusual factual circumstances here. Indeed, the facts that Woodard would fill out a consent

7

form on a third-party website, under the guise of her husband, have multiple prolonged conversations with HIA's employees, and repeatedly ask for callbacks but never mentioned she did not wish to be called suggest that her TCPA claim cannot be valid. Thus, HIA respectfully submits that the parties and the Court would greatly benefit from a bifurcated discovery, given the unique circumstances in this case. *See Harris v. Shore Funding Sols. Inc.*, No. 23CV00789JMAJMW, 2023 WL 3440077, at *5 (E.D.N.Y. Apr. 21, 2023) (finding "good cause" in a TCPA case for "limited discovery related to Plaintiff's individual claim" because "such discovery would not result in duplication of efforts or substantially overlap with class discovery" and would better serve the main goals of Rule 1—i.e., speed and efficiency).

In contrast, conducting broad class discovery is not relevant or necessary to address certain issues that may be dispositive of Woodard's individual claims – including in particular determining the narrow dispositive issues of whether Woodard consented to the call, established a business relationship with HIA, or has standing, among other issues. Also, it would certainly be far less efficient to conduct such broad discovery here, when the narrow bifurcated discovery HIA proposes would lead to a quicker end to this case. *See Newell*, 2020 WL 13568762, at *3 (noting that focusing the parties' initial discovery efforts on the merits of plaintiff's TCPA individual claim "'has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.'") (quotation omitted); *see also Akselrod*, 2021 WL 100666, at *2 (finding that focusing the initial phase discovery on the merits of plaintiff's individual TCPA claim would be more efficient). This Court should reach the same conclusion in this case.

Lastly, while Woodard argue in her response, any "overlap" between "merits" and "class discovery" would be minimal at best (if there is any at all), and numerous courts have rejected this

8

argument in TCPA cases. *See Moore v. Demand Sci. Grp., LLC*, No. 1:22-CV-01539, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) (granting motion to bifurcate discovery in a TCPA case and stating that: "The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation … because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal."); *see also Physicians Healthsource, Inc.*, 2014 WL 413534, at *4 ("Unlike Plaintiff, the Court finds that there will be no significant overlap between the two and therefore no real danger of a duplication of efforts or corresponding increase in litigation costs."); *Harris*, 2023 WL 3440077, at *5. In short, any "overlap" here should carry no weight.

In sum, a class-wide discovery is not needed on those narrow case-dispositive issues, any one of which could quickly resolve this case in one fell swoop. Doing so would be much more efficient, in accordance with Rule 1 and Rule 26's requirements.

**III.    Additional Good Cause Exists for Bifurcating Discovery in This Case.**

Additional good cause exists to bifurcate discovery and defer broader discovery in this case because this is not a run-of-the-mill litigation but instead is a putative nationwide class action. As one court correctly noted in a putative TCPA class action: "[i]t is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens." *Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020). *See Akselrod*, 2021 WL 100666, at *2 (noting that class discovery "can be particularly resource intensive"); *see also Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (noting that class action plaintiffs can sometimes use "discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit.").

9

As applied here, Woodard seeks to represent a countless number of putative class members nationwide, which undoubtedly increases the scope of discovery and thus will lead to potentially unnecessary costs and wasted party resources. But forcing HIA to respond to Woodard's broad class discovery (which would surely be national in scope and place most of the burden on HIA) now would be inherently and highly prejudicial to HIA when that discovery could all be rendered moot if individual discovery resolves the case. All this can be determined and confirmed efficiently by focusing the initial discovery phase on the merits of Woodard's claims and HIA's counterclaims.

Meanwhile, Woodard will suffer no prejudice if the Court bifurcates discovery and, even if she came up with some hypothetical prejudice, "any prejudice to Plaintiff [because of bifurcated discovery] is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery" that HIA will face here, should narrower discovery prove she has no claim or lacks standing. *Newell*, 2020 WL 13568762, at *3; *see also Harris*, 2023 WL 3440077, at *5 (holding that granting bifurcation would not prejudice the plaintiff because the case was in the nascent stages).

Finally, Woodard may be equally interested (if not more so) in determining whether the bifurcated discovery will be a complete bar to her claims, before conducting expensive and time-consuming class discovery. While that class discovery would surely be more burdensome to HIA, Woodard (as well as the Court) would also be wasting time and effort in the class discovery that would all be rendered moot if bifurcated discovery shows Woodard's individual claim lacks merit or she lacks standing. And again, much of the limited discovery necessary to resolve Woodard's claims are likely already within her possession or is easily accessible to and obtainable by herself (e.g., Woodard's phone records and internet data,) and would have to be produced regardless. Class-wide discovery is unnecessary to determine if Woodard has a viable claim or lacks standing.

Thus, any attempt by Woodard to argue "prejudice" from bifurcated discovery under these circumstances is far outweighed by the extreme prejudice HIA would suffer by conducting potentially wasteful and burdensome class discovery.

## **CONCLUSION**

Based on the foregoing, this Honorable Court should limit the initial discovery to Woodard's individual claims and HIA's counterclaims.

Dated: March 25, 2025

Respectfully submitted,

By: /s/ *Tyler A. Mamone*
Tyler A. Mamone, Esq.
Florida Bar No.: 111632
(admitted *pro hac vice*)
Yetian Wang, Esq.
Florida Bar No.: 1025778
(admitted *pro hac vice*)
**MAMONE VILLALON**
100 SE 2nd St., Suite 4030
Miami, Florida, 33131
Tel: (786) 495-8180
E-mail: tyler@mvlawpllc.com
Email: yetian@mvlawpllc.com

Donald J. Morrison, Esq.
ARDC# 6225680
**KELLEHER + HOLLAND, LLC**
32 N. West Street
Waukegan, IL 60085
Tel: (847) 244-2660
Email: dmorrison@kelleherholland.com

**CERTIFICATE OF GOOD FAITH CONFERRAL**

The undersigned counsel for Defendant/Counter-Plaintiff hereby certifies that the undersigned has made reasonable efforts to confer with Plaintiff/Counter-Defendant's counsel regarding the relief sought in this Motion. Specifically, the undersigned conferred with Plaintiff/Counter-Defendant's counsel regarding the relief sought in this Motion on March 7, 2025, at 1:35 PM, and on March 11, 2025, at 3:23 PM, via email. On March 11, 2025, at 6:03 PM, via email, Plaintiff/Counter-Defendant's counsel represented that he intended to oppose. On March 24, 2025, at 4:18 PM, via email, Defendant/Counter-Plaintiff's counsel conferred with Plaintiff/Counter-Defendant's counsel again regarding this Motion. On March 24, 2025, at 4:39 PM, Plaintiff/Counter-Defendant's counsel responded that he intended to oppose.

By: /s/ *Tyler A. Mamone*
Tyler A. Mamone, Esq.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of such filing to all counsel of record as indicated on the service list.

By: /s/ *Tyler A. Mamone*
Tyler A. Mamone, Esq.