**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANTIONETTE WOODARD, individually and on behalf of all others similarly situated,<br><br>  Plaintiff/Counter-Defendant,<br>vs.<br><br>HEALTH INSURANCE ALLIANCE, LLC<br><br>  Defendant/Counter-Plaintiff. | Case No. 1:23-cv-02630 |

**<u>Plaintiff's Opposition to the Defendant's Motion to Bifurcate Discovery</u>**

In response to the Motion to Bifurcate (Doc. 51) filed by defendant Health Insurance Alliance, LLC, Plaintiff states as follows:

### I. Introduction

Nothing about this lawsuit is "manufactured." The Plaintiff received illegal calls which violated the TCPA and which the Defendant denies making. Years into this lawsuit, the Defendant still has never identified which of its vendors made the illegal calls. Yet, it continues to rely on putative hearsay "consent" it has obtained for the calls (which, again, it denies making), in asserting counterclaims against Plaintiff. To make matters worse, it now wants this plainly refuted hearsay evidence to be the basis to slow down this case even further through bifurcating discovery. This Court should deny that request as it recently did in a TCPA case last year. *See Zielonksi v. eHealth Insurance Services, Inc.,* Civil Action No. 23-cv-16406, ECF No. 29 (N.D. Ill.) ("MINUTE entry before the Honorable Elaine E. Bucklo: Defendant's motion to dismiss, motion to strike class allegations, and motion to bifurcate discovery are denied. Plaintiff's complaint adequately states a claim, the allegations of a class action are also adequately alleged and therefore not properly challenged in a motion to strike, and given the time spent fruitlessly

on these two motions, I am not going to delay this case further through bifurcation of discovery.") Similar here, this *2023* case was delayed by the Defendant's Motion to Dismiss and/or Strike that was denied. This case should proceed to discovery without delay. Indeed, faced with a nearly identical motion, Judge Harjani denied the request in another TCPA case in 2023:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*See Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023). The Court should decide the same here.

## II. The Court should Deny Defendant's Request for Bifurcation

### I. Bifurcation would be Inefficient and Inconvenient

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). This discretion extends to a district court's decision to bifurcate discovery. *Denney v. Amphenol Corp.,* No. 1:19-cv-04757-JRS-DLP, 2020 U.S. Dist. LEXIS 162911, at *3 (S.D. Ind. Sep. 4, 2020).

However, bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015). That is readily apparent here. To begin, the proposed bifurcation guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual merits" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the merits of Plaintiff's individual claims. Then, defendant files a dispositive motion limited to the

merits of Plaintiff's individual claims. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on class certification issues. And after that, there would be a second round of dispositive motions on the class claims. All told, this means at least two rounds of written discovery, two rounds of depositions (with the same witnesses being deposed twice), and then two rounds of summary judgment briefing. This is the opposite of judicial economy. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. September 15, 2014). The Court could deny the motion to bifurcate for this reason alone. *See ibid* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *EQT Prod. Co. v. Terra Servs., LLC*, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. October 21, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.")

Apart from the duplication of discovery outlined above, Health Insurance Alliance's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff' individual claims and issues of class certification. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the Plaintiff' underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the Plaintiff' cause of action." *Comcast*

*Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted). *Lakeland Reg'l Med. Ctr. v. Astellas US*, LLC, 2011 U.S. Dist. LEXIS 16684, *4 (M.D. Fla. 2011) ("the line between 'class issues' and 'merits issues' is practically difficult, if not impossible, to determine.") Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'")

  For instance, are Health Insurance Alliance's email communications with the vendor that sold them the Plaintiff's data or Health Insurance Alliance's communications and process for complying with the TCPA in general class discovery or merits discovery? Are records of all other submissions to the website Health Insurance Alliance presumably intends to assert led to the purported consent for the calls class discovery or merits discovery? Likewise, are the web server logs showing the various sources of traffic to its website merits discovery or class discovery? Given this overlap, bifurcation would "belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23989, *9 (E.D. Pa. November 29, 2004); (citing *In re Hamilton Bancorp. Inc. Securities Litigation*, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (noting that 'bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery').

  The inevitable disputes about what qualifies as merits vs. class discovery is thus a second reason to deny the request for bifurcation. As another Court held while denying a similar request for bifurcation of discovery:

> In fact, bifurcation would have the opposite effect. Much of the discovery sought appears [*7] relevant to both the class and individual claims, including documents

>concerning Plymouth's telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers, as this information is relevant to the issues of both vicarious liability for third-party conduct and willfulness. *Accord* DE [25] (Defendant arguing that it has a "strong defense" because it cannot be held "vicariously liable" for the conduct at issue as it relates to Plaintiff and recognizing the difference in recovery for a "willful" violation of the statute).
>
>Moreover, even if the named Plaintiff' claim were defeated, there is no reason to think that this case would likely end. The Complaint identifies complaints by two other individuals involving Plymouth. Both claim to have received more harassing calls than Plaintiff, and either one could replace Plaintiff as a class representative. Accordingly, there is no indication from the motion papers that Defendant's success as to Plaintiff' individual claim would necessarily result in a prompt, efficient resolution of this litigation.

*Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL, 2016 U.S. Dist. LEXIS 6778, at *6-7 (E.D.N.Y. Jan. 12, 2016). The latter reason with respect to the addition of a second plaintiff is even more compelling here where the Defendant has been repeatedly sued for TCPA violations in this Court. Accordingly, the evidence indicates not that bifurcating discovery would be an efficient way of conducting this litigation but instead that it will result in needless delay.

## II. There is Guaranteed to be a Factual Dispute over the Plaintiff's Purported Consent and the Defendant's Questionable Assertion of Fraud as a Result.

With respect to the website visit at issue, all HIA has identified is that someone visited a website not even owned by HIA and submitted Mr. Woodard's information, thus giving HIA to call Mrs. Woodard's number. That's not fraud. At most, all it establishes is the affirmative defense of consent. Along with pressing "view my results," all HIA alleges is that Ms. Woodard would have agreed to the following disclosure:

>I agree to be contacted by select insurance carriers and financial institutions listed here, their agents, individual insurance agents, and/or Assurance for marketing purposes concerning insurance and/or other financial products by phone/text at my number provided above (including by autodialer, prerecorded message and/or artificial voice), even if my number is on a do not call list, or by email at the email address I have provided. . . . .

> If I am Medicare-eligible, I am requesting to speak with a licensed agent who is certified to discuss Medicare Advantage and Prescription Drug insurance plans. This will NOT obligate me to enroll in a plan, affect my current enrollment, or enroll me in a Medicare plan.

Nothing in that purported agreement gives rise to any of the allegedly "fraudulent" representations alleged. All it says is that the person authorizes (unspecified) "insurance carriers and financial institutions" to contact them. *Nowhere* in the *very language of the purported consent* does it say that Ms. Woodard "opted to receive telemarketing calls." Nowhere does that form say what Ms. Woodard allegedly knew, that "that companies covered by that opt-in form would rely on that TCPA-compliant form to place phone calls to her number or to transfer calls to other covered companies, like HIA." It doesn't even say that the person is interested in learning about insurance, wanted to receive phone calls, or that the person would want to purchase a policy. To the contrary, it says the opposite, that the consent will "NOT obligate me to enroll in a plan, affect my current enrollment, or enroll me in a Medicare plan."

But this all goes beyond the more pertinent point; Ms. Woodard has conclusively stated in an affidavit previously submitted to this Court that she made no such website visit. As such, the parties are destined for a factual dispute on this issue. Indeed, a similar dispute was resolved in *Clotz v. The Federal Savings Bank, et. al.*, Civil Action No. 22-cv-3755, ECF No. 66, which denied a motion for summary judgment on consent in TCPA case holding:

> Consent is an affirmative defense to a TCPA claim on which the defendants bear the burden of proof…To prevail, the defendants must establish express consent relating "to the same subject matter as is covered by the challenged calls." *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044–45 (9th Cir. 2017)). On summary judgment, the defendants "must lay out the elements of the [defense], cite the facts which [they] believe[] satisf[y] these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant . . . ." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)

> Clotz admitted that the IP address shown in the lead report is his own (R. 52-2 ("Clotz Dep.") at 29:17-30:18), that he lives at the listed address in Lorain, Ohio, and that clotzterry@gmail.com is his email address. (*See id.* at 29:10–31:20; Pl.'s Resp. to Def.'s SOF ¶¶ 12, 15, 25–27.) He testified that he was the only person in his household who uses his phone, tablet, or laptop (Clotz Dep. at 19:6–16), and that he is the only person who would have been using the internet in his home on the date in question. (*Id.* at 36:5–10.) Nonetheless, Clotz denied having visited FedRateWatch.org. (*Id.* 27:8–10; 31:20–22.) Clotz presented screenshots of his browsing history for April 2022. (*See* R. 56-1.) FedRateWatch.org does not appear in the screenshots. (*Id.*) While Clotz admitted that he could not "say for certain whether or not [his] searches returned a complete Internet history," (Clotz Dep. at 32:16–19), he was adamant that he never visited the website. (*Id.* at 31:20–22; 39:21–40:1.)
>
> Here, conflicting evidence as to whether Clotz actually visited FedRateWatch.org on the date in question precludes granting summary judgement in favor of the defendants.

The evidence is even stronger here for the Plaintiff as the Defendant does not have the right IP address, strongly supporting someone else visited the website. The Defendant should not be permitted to conduct discovery on a single issue that is destined to be resolved in a disputed issue of material fact. This is in addition to the many other potential attacks that could be developed regarding the single affirmative defense of consent. See e.g. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024), (denying motion for summary judgment on basis that legally sufficient consent was not obtained); *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021) (holding that the consent to make calls purportedly obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent.")

### III. Bifurcation would Prejudice Plaintiff

Finally, the Court should deny the motion to bifurcate because it will prejudice Plaintiff' case. Health Insurance Alliance's request to limit discovery initially to its preferred issues is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying virtually identical request to bifurcate in a TCPA case). "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Ibid.*

There is a real risk that the requested bifurcation will prejudice Plaintiff through the loss of evidence held by third parties, such as any third-party vendors involved in the maintenance of the websites at issue or Health Insurance Alliance's calls. *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3rd Cir. 2008) ("Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'"); *Hartley-Culp* 2014 U.S. Dist. LEXIS 130308 at *9 (denying similar request in another TCPA case after "find[ing] prejudice to Plaintiff if discovery was bifurcated" in the same manner requested here); *Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."); *Saleh v. Crunch, LLC*, 2018 U.S. Dist. LEXIS 36764, at *5 (S.D. Fla. Feb. 28, 2018) (denying a stay in a TCPA case and noting that the "fading memory of any witness" is prejudicial).

Any potential bifurcation will also necessarily delay class discovery and Plaintiff's motion for class certification prejudicing Plaintiff and the proposed class members. *See* Fed. R.

Civ. P. 1, 23(c)(1)(A). Delays in class discovery compound the already-substantial difficulty of gathering information necessary to identify class members and establish their claims. *See Young v. Peraza*, No. 1560968-CIV, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"). Additionally, any delay creates the risk that the evidence Plaintiff needs to prevail on his claim will be destroyed, lost, corrupted, or forgotten. *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490, at *12 (N.D. Cal. Jan. 8, 2016) (Plaintiff in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *accord Izor v. Abacus Data Sys.*, 2019 U.S. Dist. LEXIS 130865, at *10 (N.D. Cal. Aug. 5, 2019); *see Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).

    **IV.**    **Conclusion**

The Court should deny the motion to bifurcate discovery.

RESPECTFULLY SUBMITTED AND DATED this April 2, 2025.

/s/ *Anthony I. Paronich*
Anthony I. Paronich,
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2025, I electronically sent the foregoing to counsel of record for the Defendant.

/s/ *Anthony I. Paronich*
Anthony I. Paronich